UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DADBOD APPAREL LLC, | No.  2:24-cv-00188 DJC AC |
| Plaintiff, | |
| v. | ORDER |
| HILDAWN DESIGN LLC, et al., | |
| Defendants. | |

Plaintiff Dadbod Apparel LLC ("Dadbod") brings the present suit alleging that Defendants Hildawn Design LLC ("Hildawn") and Hilary D. Wertin misused trademarks to interfere with Plaintiff's sale of various goods.  Plaintiff alleges that Defendants utilized their ownership of the "GIRLDAD" trademark to initiate takedown actions against several of Plaintiff's products on online retailers Amazon and Etsy despite those products not infringing on Defendants' trademark.  Defendants now bring a Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, Motion to Transfer Venue under Federal Rule of Civil Procedure 12(b)(3).  (ECF No. 7.)

For the reasons stated below, the Court grants Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

////

## BACKGROUND

This action originates mainly from Plaintiff's sale of "a line of apparel and accessories bearing the purely ornamental and decorative slogan 'Support Your Local Girl Dad' . . . ." (Compl. (ECF No. 1). ¶16.) On June 23, 2023, Plaintiff received a Cease and Desist Letter from Defendants which asserted that Plaintiff was selling products in violation of Defendants' GIRLDAD trademark. (*Id.* ¶ 18; *see* Cease and Desist Letter (ECF No. 1-1).) After Plaintiff sought clarification, Defendants specified that the alleged violation of the GIRLDAD trademark was "the parenthetical reference to 'GIRL DAD' when describing the goods being sold on the Dadbod Apparel website." (*Id.* ¶¶ 19–20; *see* 7/10/23 Email (ECF No. 1-2); 8/23/23 Email (ECF No. 1-3).) Plaintiff claims to have removed the "(Girl Dad) references from its website and various online stores" but on November 13, 2023, Defendants initiated takedown actions against several of Plaintiff's product listings on Amazon and Etsy based on alleged infringement of Defendants' trademark. (Compl. ¶¶ 21, 24.) Defendants allegedly initiated further takedown actions on December 15, 2023, December 19, 2023, December 27, 2023, December 29, 2023, and January 4, 2023. (*Id.* ¶ 24.) "Defendants' take-down actions focused exclusively on Plaintiff's apparel bearing the purely ornamental and decorative slogan 'Support Your Local Girl Dad.'" (*Id.*) As a result of these actions, "Amazon and Etsy removed from Plaintiff's storefronts all goods bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad.'" (*Id.* ¶ 29.)

Based on the allegations above, Plaintiff brought the present suit seeking a declaratory judgment of non-infringement of Defendants' mark as well as bringing claims for intentional interference with prospective economic advantage and for violation of the Sherman Act. (*Id.* ¶¶ 33–55.)

////

////

////

## MOTION TO DISMISS

### I. Defendant's Motion

Defendants presently bring a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2). (Defs.' Mot. (ECF No. 7-1).) Defendants argue that the action should be dismissed for lack of personal jurisdiction as they are not subject to general jurisdiction given that Defendant Wertin does not reside in California and Defendant Hildawn is not incorporated in California or have its principal place of business there. (*Id.* at 6.) Defendants also argue they are not subject to specific jurisdiction as Defendants did not avail themselves of the privileges of conducting activities in California or direct their conduct to that forum and because Plaintiff's claims do not arise or relate to Defendants' activities in California. (*Id.* at 9–10.) This motion is fully briefed. (Pl.'s Opp'n (ECF No. 17); Defs.' Reply (ECF No. 18)).

### II. Legal Standard

#### A. Personal Jurisdiction Generally

Rule 12(b)(2) allows a party to assert a lack of personal jurisdiction as a defense and request dismissal of the suit. Fed. R. Civ. P. 12(b)(2). "Although the defendant is the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). "[I]n the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (*quoting Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Daimler*, 571 U.S. at 126 (citing *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). Facts presented by the plaintiff are taken as true for the purposes of a 12(b)(2) motion to dismiss, except where contradicted by an

affidavit, and any "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted); *see Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." (citations and internal quotations removed)).

"In exercising personal jurisdiction, a federal district court is constrained by the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in which it sits." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023). California's long-arm statute allows the exercise of personal jurisdiction to the extent allowed by the U.S. Constitution. *See* Cal. Code Civ. Proc. § 410.10. Accordingly, the Court need only assess whether the exercise of jurisdiction in this case comports with due process.

### B. General and Specific Jurisdiction

"The Due Process Clause permits the exercise of personal jurisdiction if the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Impossible Foods*, 80 F.4th at 1086. Courts may have general or specific jurisdiction over an entity depending on the nature and extent of that entity's contact with the forum state. A court may exercise general jurisdiction over a corporation in a state where the corporation is "at home," which is the case when its "affiliations . . . are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 119 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). This is generally where the corporation is incorporated and where it maintains its principal place of business. *Id.* As to an individual defendant, general jurisdiction is appropriate where they are domiciled which is where they reside with the intent to remain. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014);

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Here, Plaintiff does not argue that the Court has general jurisdiction over Defendants and Plaintiff has not alleged facts establishing general jurisdiction would be appropriate over either defendant.  (*See* Opp. at 4 (arguing why the Court has specific jurisdiction).)

Where general jurisdiction is lacking, courts may have specific jurisdiction over corporations if there is sufficient contact with the forum state and the claims arise out of that contact.  *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) ("[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" (quoting *Goodyear*, 564 U.S. at 919)).  In the Ninth Circuit, specific jurisdiction is determined by a three-prong test: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'"  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  "The plaintiff bears the burden of satisfying the first two prongs of the test" while the burden of the third prong shifts to defendant.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### 1. Purposeful Availment

While the first prong of the specific jurisdiction test is often called the "purposeful availment" prong, courts situationally apply either a purposeful availment or purposeful direction analysis.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006).  The question of whether to apply a purposeful direction or purposeful availment analysis "turns on the nature of the underlying claims."  *Impossible Foods*, 80 F.4th at 1088 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)).  While there is no "rigid dividing line

between purposeful availment and purposeful direction[,]" purposeful direction is generally preferred when analyzing tort claims as these claims typically involve fact patterns where "a defendant's conduct primarily occurs outside the forum state." *Id*. at 1088–89.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citations and internal quotations removed). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. Likewise, purposeful direction involves intentional contact with the forum state. It is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" that are relevant to the inquiry. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The defendant's mere knowledge that the plaintiff resides in the forum state "will not, on its own, support the exercise of specific jurisdiction." *Axiom Foods*, 874 F.3d at 1070. However, "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff . . . ." *Walden*, 571 U.S. at 286. Only purposeful contacts, and not random, fortuitous, or attenuated contacts will give rise to personal jurisdiction. *Id.*

### 2. Relation of Claim to Forum Activities

The claims brought by the plaintiff must arise out of or relate to the defendant's contacts with the forum in order for the court to exercise jurisdiction. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021). However, a strict causal relationship is not required to satisfy the relation prong. *Id.* Rather, there need only be a "connection" between the forum-related activity and the injury claimed. *Id*. The Ninth Circuit employs a "but for" test to determine whether a plaintiff's claims arise out of defendant's forum-related activities. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir.

6

2007).

### 3. Reasonableness

The final prong of the personal jurisdiction analysis examines whether the court exercising jurisdiction would be reasonable. *Menken*, 503 F.3d at 1058. This determination requires consideration of seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.*

## III. Discussion

### A. Purposeful Availment

In determining whether Defendants' actions satisfy the purposeful availment prong, Plaintiff is correct that Defendants' alleged contacts with the forum are better considered under a purposeful direction analysis. "Trademark infringement is treated as tort-like for personal jurisdiction purposes," and thus a purposeful direction analysis is applied. *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1035 (9th Cir. 2023) (quoting *Ayla*, 11 F.4th at 979). The same is true of claims for intentional interference with contractual relations. *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 747 (N.D. Cal. 2015) (finding the purposeful direction analysis was also appropriate for a claim of intentional interference with contractual relations). Thus, the Court applies a purposeful direction analysis here as these are the bulk of Plaintiff's claims. Additionally, the purposeful direction analysis is appropriate as this action mainly concerns Defendants' conduct outside the state and is not akin to a contract claim where Defendants have created continuing obligations to forum residents. *Impossible Foods*, 80 F.4th at 1088–89.

Under a purposeful direction analysis, courts apply the *Calder* "effects" test

which imposes three requirements, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803). In the Complaint, Plaintiff alleges two sets of actions by the Defendants to which the purposeful direction analysis can be applied. First, Defendants sent Plaintiff a Cease and Desist Letter (along with a subsequent clarification email), and second, Defendants initiated a series of takedown actions with Amazon and Etsy against Plaintiff. The Court addresses each in turn.

### 1. Cease and Desist Letter

Generally speaking, cease and desist letters are insufficient on their own to establish personal jurisdiction over the sender. *Yahoo!*, 433 F.3d at 1208. Plaintiff argues that *Bancroft Masters, Inc., v. Augusta National*, should guide the Court's analysis and that based on *Bancroft*, Defendants' Cease and Desist Letter establishes personal jurisdiction. *Bancroft,* 223 F.3d 1082 (9th Cir. 2000) *overruled in part on other grounds by Yahoo!*, 433 F.3d 1199. In *Bancroft*, the defendant had sent two cease and desist letters to NSI, a third party who was "the sole registrar of domain names", in order to trigger NSI's dispute resolution policy. *Yahoo!*, 433 F.3d 1208 (citing *Bancroft*, 223 F.3d at 1088). By triggering this dispute resolution policy, the defendant intended to interfere with the plaintiff's usage of its domain name and "misappropriate [plaintiff's domain] name for [the defendant's] own use." *Id.* (citing *Bancroft*, 223 F.3d at 1087). However, as the Ninth Circuit later noted in *Yahoo!*, *Bancroft* is limited to situations in which the use of cease and desist letters was abusive, tortious, or wrongful. *Id.*

In light of *Yahoo!*, *Bancroft* does not alter the Court's determination that Defendants' Cease and Desist Letter alone is insufficient to establish personal jurisdiction. Plaintiff has not shown or even argued that the Cease and Desist Letter or related communication was in any way abusive, tortious, or otherwise wrongful. As stated in the Complaint, Plaintiff's injury and claims concern Defendants' alleged

8

initiation of takedown actions with Etsy and Amazon based on Plaintiff's usage of the "Support Your Local Girl Dad" slogan, not the Cease and Desist Letter the earlier usage of "(GIRL DAD)" on Plaintiff's website that prompted those letters. (*See id.* ¶¶ 32, 44, 46–47, 52.) Plaintiff's claims do not stem from the Letter and subsequent related communications. As alleged, the Cease and Desist Letter appears to only be Defendants' attempt to enforce its trademark; an attempt with which Plaintiff complied. (*Id.* ¶ 21.) The enforcement of a trademark is not an abusive, tortious, or otherwise wrongful purpose, and Plaintiff has not argued that Defendants had such a purpose. *Yahoo!*, 433 F.3d at 1208. As such, Defendants' Cease and Desist Letter cannot serve as the basis for personal jurisdiction on its own.

### 2. Amazon and Etsy Takedown Actions

The other actions attributed to Defendants in the Complaint are the initiation of takedown actions with Amazon and Etsy. (Compl. ¶ 24.) Looking at each of the *Calder* factors in turn, the initiation of these actions is clearly an intentional act, a fact Defendants do not seem to contest. (*See* Defs.' Reply at 4.) The Court must then consider to whether Defendants' actions were expressly aimed at California. *Yahoo!*, 433 F.3d at 1206.

In determining whether an exercise of jurisdiction is appropriate, the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), limits the analysis of purposeful direction to the defendant's contacts to the forum itself. Under *Walden*, courts may not permit "a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289. In the Supreme Court's view, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. Importantly, "[t]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

In *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064 (9th Cir. 2017), the Ninth Circuit considered the impact of *Walden*. In doing so, it found that

after *Walden*, minimum contacts require more than defendant's knowledge of a plaintiff's strong connections to a forum plus the foreseeable harm the plaintiff would suffer in that forum. *Id.* at 1069-70. Considering the express aiming portion of *Calder* in light of *Walden*, the Ninth Circuit stated that "[t]he Court made clear that we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods*, 874 F.3d at 1070; *see also Briskin v. Shopify, Inc.*, 87 F.4th 404, 417 (9th Cir. 2023) (restating that express aiming is not satisfied by a defendant directing conduct at a plaintiff whom the defendant knew had connections with a forum). This is especially true where an injury is "entirely personal to [the plaintiff] and would follow [them] wherever [they] might choose to live or travel." *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015).

In light of *Walden* and the Ninth Circuit's interpretation of its effect, the Court cannot find that Defendants expressly aimed their conduct at California. Plaintiff's strong connections to this forum and Defendants' knowledge of Plaintiff's presence in California are insufficient to establish express aiming, even where Defendant knew Plaintiff would suffer that harm in this forum. *See Axiom Foods*, 1069-70. The sole alleged basis for Defendants' connection with the forum state is predicated not on Defendants' contacts with the forum but on Defendants' contacts with Plaintiff and *Plaintiff's* contact with the forum. This sort of vicarious forum contact that relies solely on the Plaintiff's contacts with the forum is exactly what *Walden* instructs is insufficient to establish express aiming. *Walden*, 571 U.S. at 285 ("The plaintiff cannot be the only link between the defendant and the forum."). Moreover, Plaintiff's injuries are personal to them and are not connected to the forum state as the injury would follow Plaintiff wherever it might reside. *Picot v. Weston*, 780 F.3d at 1215.

The Court does note that before *Walden*, the Tenth Circuit had found that the initiation of a similar takedown action was purposeful direction at the state where the target of the takedown action was located. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008). The Tenth Circuit reasoned a takedown

action was expressly aimed at a forum where the defendant had the intent of affecting the plaintiff and the defendant knew the plaintiff resided in the forum.  *Id.* at 1075. Post-*Walden*, the Tenth Circuit has maintained that its holding in *Dudnikov* is still valid. *See, e.g., Anzures v. Flagship Restaurant Group*, 819 F.3d 1277, 1282 (10th Cir. 2016) (suggesting *Dudnikov* was still appropriate post-*Walden* as the defendant "acted with the ultimate purpose of canceling plaintiffs' auction in Colorado and so expressly aimed their conduct at Colorado." (citations and internal quotations removed)). However, the reasoning of *Dudnikov* appears to run against the Ninth Circuit's interpretation of the *Walden* decision as well as *Walden* itself.  *See Walden*, 571 U.S. at 285–90; *see also Axiom Foods*, 874 F.3d at 1069–70; *Briskin*, 87 F.4th at 416–17. *Walden* and the Ninth Circuit's subsequent decisions clearly instruct that a plaintiff's presence in the forum cannot serve as the basis for minimum contacts, regardless of the defendant's knowledge of that presence.  As such, Defendants' initiation of takedown actions does not constitute purposeful direction as the express aiming portion of the *Calder* test is not satisfied solely by allegations that Defendants' actions were intended to affect Plaintiff and that Defendants had knowledge of Plaintiff's contacts with the forum.[1]

As neither the Cease and Desist Letter nor the initiation of takedown actions are sufficient to satisfy the purposeful direction analysis, this Court lacks personal jurisdiction over Defendants.[2]  *See Yahoo!*, 433 F.3d at 1210; *see also Schwarzenegger*, 374 F.3d at 802.

////

////

---

[1] Though the Court already rejected the Cease and Desist Letter as a basis for personal jurisdiction above, it also notes that the Letter and subsequent communications would also fail to satisfy the express aiming portion of the *Calder* test for the same reason.

[2] The Complaint and Plaintiff's Opposition to the present motion also mention that Plaintiff's counsel and Defendants' counsel "spoke telephonically" after some of the takedown actions were initiated. (Compl. ¶ 26; Pl's Opp'n at 3.)  Plaintiff has not argued that this would constitute an action expressly aimed at the forum and, as alleged, this would be insufficient to establish purposeful direction for the same reasons as it also only relates to conduct directed at Plaintiff, not the forum.

**LEAVE TO AMEND AND JURISDICTIONAL DISCOVERY**

Plaintiff requests they be granted leave to amend the Complaint. (Pl.'s Mot. at 13.) "In general, leave to amend is only denied if it is clear that amendment would be futile and that the deficiencies of the complaint could not be cured by amendment." *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 608 (N.D. Cal. Oct. 22, 1992) (internal citations and quotations omitted); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation omitted)). Plaintiff will be granted leave to amend as it is not clear that amendment would be futile.

Plaintiff argues they "should be granted limited discovery into Hildawn' forum-related activities." (Pl.'s Mot. at 19.) While generally "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary[,]" *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986), a request for jurisdictional discovery may be denied where a plaintiff "fail[s] to identify any specific facts, transactions, or conduct that would give rise to personal jurisdiction . . . ." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011). As discussed, Plaintiff's has not presently alleged any facts, transactions, or conduct that could possibly give rise to personal jurisdiction. As such, the Court will deny Plaintiff's request and not permit limited jurisdictional discovery.

**CONCLUSION**

As detailed above, the Court lacks personal jurisdiction over this action as Defendants are not subject to general jurisdiction and are not subject to specific jurisdiction as they have not availed themselves of this forum.[3] The Court will thus dismiss this action for lack of jurisdiction.

---

[3] As the Court grants Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, it need not address Defendants' alternative Motion to Transfer Venue.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 7) is GRANTED. *See* Fed. R. Civ. P. 12(b)(2); and

2. The Complaint is dismissed with leave to amend. Within fourteen (14) days of this order, Plaintiff must file a First Amended Complaint. Failure to comply with this order may result in dismissal of this action.

IT IS SO ORDERED.

Dated: **April 29, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – dadbod23cv00188.12b2