UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DADBOD APPAREL LLC, | No. 2:24-cv-00188-DJC-AC |
| Plaintiff, | |
| v. | ORDER |
| HILDAWN DESIGN LLC, et al., | |
| Defendants. | |

Plaintiff Dadbod Apparel LLC brings the present suit alleging that Defendants Hildawn Design LLC and Hilary D. Wertin misused trademarks owned by Defendants to interfere with Plaintiff's sale of various goods on online platforms. Plaintiff alleges that Defendants utilized their "GIRLDAD" trademark to initiate takedown actions against several of Plaintiff's products on third-party marketplaces Amazon and Etsy despite the fact that Plaintiff's products did not infringe on Defendants' trademark. The Court previously granted Defendants' first motion to dismiss for lack of jurisdiction but provided Plaintiff with an opportunity to amend its complaint. (MTD Order (ECF No. 20).) Plaintiff now filed a First Amended Complaint ("FAC" (ECF No. 21)) and Defendants are again seeking dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction (Mot. (ECF No. 22)).

////

1

For the reasons stated below, the Court grants Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

## BACKGROUND

The Court previously summarized the factual allegations underlying Plaintiff's claims in its original order. (*See* MTD Order at 2; *see also* Compl. (ECF No. 1).) While Plaintiff's FAC seeks to add more claims, the core factual allegations remain largely the same. (*See* FAC.) Relevant to personal jurisdiction, the FAC includes a few changes and additions.[1] The most significant of these is the addition of paragraphs 31 and 32 of the FAC which state, in full:

> 31. Plaintiff is informed and believes, and thereon alleges, Defendants were well aware that if Plaintiff took no action in response to Defendants' fraudulent take-down notices, or if the third-party marketplaces deemed Plaintiff a repeat/habitual infringer, its product listings would be permanently removed, which would necessarily affect its sales and activities, particularly in California.
> 32. Plaintiff is informed and believes, and thereon alleges, that Defendants' fraudulent Cease and Desist letters and take-down notices were attempts to wrongfully expand Defendants' market share by reducing competition for apparel and accessories merely bearing the words "GIRL" and "DAD." Plaintiff is informed and believes, and thereon alleges, that Defendants have engaged in similar, if not identical, fraudulent behavior against other competitors in California.

(FAC ¶¶ 31–32.)

Defendants filed the present motion arguing that these additions are insufficient to establish personal jurisdiction over the Defendants. The motion is fully briefed (*See* Mot.; Opp'n (ECF No. 26); Reply (ECF No. 27)) and this matter was submitted on the briefing without oral argument pursuant to Local Rule 230(g).

---

[1] The FAC contains other changes such as referring to Amazon and Etsy (as well as TikTok, which was not included in the initial complaint) as "third-party marketplaces" instead of "online vendors" as they were identified in the first complaint. (*Compare* FAC ¶ 14 *with* Compl. ¶ 14.) The Court only includes changes that have some relevance to the ultimate determination of whether the Court has personal jurisdiction over Defendants.

**MOTION TO DISMISS**

I. **Legal Standard**

   A. **Personal Jurisdiction Generally**

Rule 12(b)(2) allows a party to assert a lack of personal jurisdiction as a defense and request dismissal of the suit. Fed. R. Civ. P. 12(b)(2). "Although the defendant is the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). "[I]n the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (*quoting Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citing *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). Facts presented by the plaintiff are taken as true for the purposes of a 12(b)(2) motion to dismiss, except where contradicted by an affidavit, and any "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted); *see Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." (citations and internal quotations removed)).

"In exercising personal jurisdiction, a federal district court is constrained by the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in which it sits." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir.

3

2023). California's long-arm statute allows the exercise of personal jurisdiction to the extent allowed by the United States Constitution. *See* Cal. Code Civ. Proc. § 410.10. Accordingly, the Court need only assess whether the exercise of jurisdiction in this case comports with due process.

**B. General and Specific Jurisdiction**

"The Due Process Clause permits the exercise of personal jurisdiction if the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Impossible Foods*, 80 F.4th at 1086. Courts may have general or specific jurisdiction over an entity depending on the nature and extent of that entity's contact with the forum state. A court may exercise general jurisdiction over a corporation in a state where the corporation is "at home," which is the case when its "affiliations . . . are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 119 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). This is generally where the corporation is incorporated and where it maintains its principal place of business. *Id*. As to an individual defendant, general jurisdiction is appropriate where they are domiciled which is where they reside with the intent to remain. *Daimler*, 571 U.S. at 125; *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Here, Plaintiff does not argue that the Court has general jurisdiction over Defendants and Plaintiff has not alleged facts establishing general jurisdiction would be appropriate over either defendant. (*See* Opp. at 4 (arguing why the Court has specific jurisdiction).)

Where general jurisdiction is lacking, courts may have specific jurisdiction over corporations if there is sufficient contact with the forum state and the claims arise out of that contact. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) ("[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" (quoting *Goodyear*, 564 U.S. at 919)). In

the Ninth Circuit, specific jurisdiction is determined by a three-prong test: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The plaintiff bears the burden of satisfying the first two prongs of the test" while the burden of the third prong shifts to the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### 1. Purposeful Availment

While the first prong of the specific jurisdiction test is often called the "purposeful availment" prong, courts situationally apply either a purposeful availment or purposeful direction analysis. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The question of whether to apply a purposeful direction or purposeful availment analysis "turns on the nature of the underlying claims." *Impossible Foods*, 80 F.4th at 1088 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)). While there is no "rigid dividing line between purposeful availment and purposeful direction[,]" purposeful direction is generally preferred when analyzing tort claims as these claims typically involve fact patterns where "a defendant's conduct primarily occurs outside the forum state." *Id.* at 1088–89.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citations and internal quotations removed). "A showing that a defendant purposefully availed himself of the privilege

5

of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802.  Likewise, purposeful direction involves intentional contact with the forum state.  It is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" that are relevant to the inquiry.  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  The defendant's mere knowledge that the plaintiff resides in the forum state "will not, on its own, support the exercise of specific jurisdiction."  *Axiom Foods*, 874 F.3d at 1070.  However, "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff . . . ."  *Walden*, 571 U.S. at 286.  Only purposeful contacts, and not random, fortuitous, or attenuated contacts will give rise to personal jurisdiction.  *Id.*

### 2.  Relation of Claim to Forum Activities

The claims brought by the plaintiff must arise out of or relate to the defendant's contacts with the forum in order for the court to exercise jurisdiction.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021).  However, a strict causal relationship is not required to satisfy the relation prong.  *Id.*  Rather, there need only be a "connection" between the forum-related activity and the injury claimed.  *Id.*  The Ninth Circuit employs a "but for" test to determine whether a plaintiff's claims arise out of the defendant's forum-related activities.  *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

### 3.  Reasonableness

The final prong of the personal jurisdiction analysis examines whether the court exercising jurisdiction would be reasonable.  *Menken*, 503 F.3d at 1058.  This determination requires consideration of seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to

the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.*

## II. Discussion

### A. Purposeful Availment vs. Purposeful Direction

In its first order, the Court determined that personal jurisdiction in this case was better analyzed under a purposeful direction analysis as opposed to a purposeful availment analysis in part because Plaintiff's claims were more similar to a tort than a contract claim. (*See* MTD Order at 7.) In connection with the present motion, the parties include arguments for both the purposeful availment or purposeful direction tests but neither party includes substantive argument about which analysis is more appropriate. (*See* Opp'n at 6–11; Reply at 7-12.)

The core of Plaintiff's claim is one based on trademark infringement, "[which] is treated as tort-like for personal jurisdiction purposes . . . ." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1035 (9th Cir. 2023) (quoting *Ayla*, 11 F.4th at 979) (internal quotation marks and citations omitted). While Plaintiff has added UCL and unjust enrichment claims in amending the complaint, the addition of these claims does not change the Court's determination that the purposeful direction analysis is appropriate, as both UCL and unjust enrichment claims are commonly analyzed under a purposeful direction analysis. *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015) (applying purposeful direction analysis to UCL claims related to trademark issues); *see also S.D. v. Hytto Ltd.*, No. 18-cv-00688-JSW, 2019 WL 8333519, at *3 (N.D. Cal. May 15, 2019) (applying purposeful direction analysis to unjust enrichment claims). Finally, as noted by the Court's initial order (*see* MTD Order at 7), purposeful direction is appropriate as this action is focused mainly Defendants' conduct outside the state and is not akin to a contract claim where Defendants have created continuing obligations to forum

////

////

residents.² *Impossible Foods*, 80 F.4th at 1088–89. Thus, the Court will apply the purposeful direction analysis to determine if the first prong of the specific jurisdiction test is met.

### B. Purposeful Direction

The purposeful direction analysis involves applying the *Calder* "effects" test which imposes three requirements, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803). In ruling on the first motion to dismiss, the Court found that Plaintiff had failed to establish that Defendants' acts were expressly aimed at the forum state.

As noted, two paragraphs of Plaintiff's FAC constitute the bulk of the new allegations supporting personal jurisdiction. In the first of these paragraphs, Plaintiff alleges – based on information and belief – that Defendants were "well aware" that as a result of its actions, "[Plaintiff's] product listings would be permanently removed, which would necessarily affect its sales and activities, particularly in California." (FAC ¶ 31.) In the second, Plaintiff alleges – again on information and belief – that ". . . Defendants' fraudulent Cease and Desist letters and take-down notices were attempts to wrongfully expand Defendants' market share by reducing competition . . ." and that ". . . Defendants have engaged in similar, if not identical, fraudulent behavior against other competitors in California." (*Id.* ¶ 32.) Neither of these factual allegations ultimately alters the Court's analysis in its order for the initial motion to dismiss as the

---

² As noted, in opposing Defendants' Motion, Plaintiff includes both purposeful availment and purposeful direction arguments. (Opp'n at 6–11.) Plaintiff's argument for the Court finding purposeful availment is that Defendant Hildawn "does business in California and in this district" based on the claim that "California comprises roughly 11.63% of the U.S. population" and a calculation that, "assuming, *arguendo*, domestic online sales are proportional among the States according to population, California can reasonably be presumed to account for at least 12 of the 100+ sales [Defendant] made in just the past month on one item of GIRLDAD branded apparel." (Opp'n at 6–7.) Even if the purposeful availment analysis was appropriate here, such extreme speculation cannot form the basis for purposeful availment.

8

1  alleged actions taken by Defendants are insufficient to establish express aiming at the
2  present forum.

### 1. Cease and Desist Letter

The first of the two actions Defendants allegedly took was the issuance of a cease and desist letter. As discussed in the Court's first order, cease and desist letters are generally insufficient to establish personal jurisdiction on their own. *Yahoo!*, 433 F.3d at 1208. While Plaintiff makes no argument to this end in their opposition, the additional factual allegations in the FAC seem intended to bring the cease and desist letters within the ambit of the limited situation identified by *Bancroft Masters, Inc., v. Augusta National*, 223 F.3d 1082 (9th Cir. 2000) *overruled in part on other grounds by Yahoo!*, 433 F.3d 1199.[3] However, even if Plaintiff had raised this argument in its briefing, it would be unpersuasive.

As discussed in *Yahoo!*, 433 F.3d at 1208, the exception in *Bancroft* to the general rule that cease and desist letters are insufficient to establish personal jurisdiction is applicable only where the use of cease and desist letters was abusive, tortious, or wrongful. While Plaintiff newly alleges in the FAC that the cease and desist letters and take-down notices were "attempts to wrongfully expand Defendants' market share by reducing competition[,]" (Compl. ¶ 32), nothing in the FAC actually establishes that the use of these letters was wrongful beyond this conclusory statement. That a company would have a partial motivation to reduce competition and increase market share does not, by itself, make the sending of such a letter wrongful. Companies have a natural interest in increasing market share. Even where a company rightfully seeks to prevent copyright infringement, removing competition undoubtedly remains a motivating factor for sending a cease and desist letter to an

---

[3] As discussed later below, *see supra* II.B.2.ii, the approach to express aiming applied in *Bancroft* is no longer valid. This may necessarily undercut some portions of *Bancroft*'s analysis, but the central holding is still valid and applied by the Ninth Circuit. *See San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1035–36 (9th Cir. 2023) (citing *Bancroft*, 223 F.3d 1082). However, the Court need to ultimately reach this issue as even applying *Bancroft*, Plaintiff has not satisfied the narrow exception *Bancroft* recognized.

infringing party.  Beyond a conclusory allegation of wrongfulness, Plaintiff has not shown that the use of cease and desist letters itself was abusive, tortious, or otherwise wrongful.  As such, Plaintiff has not established that the cease and desist letters fall within the narrow carve-out provided by *Bancroft* and cannot alone establish that Defendants' actions were expressly aimed at this forum.  *See Yahoo!*, 433 F.3d at 1208.

### 2. Takedown Actions

#### i. New Factual Allegations

In granting Defendants' first motion to dismiss, the Court found that the takedown actions Defendants allegedly initiated did not qualify as an act expressly aimed at the forum because the sole connection between Defendants' alleged actions and California was Plaintiff's presence in the state.  (MTD Order at 9-10.)  The Court reasoned that under binding Supreme Court and Ninth Circuit case law, the Court's determination of express aiming must be based on Defendants' own contacts with the forum state, not simply the fact that Defendants knew Plaintiff was connected to that forum.  (*See id.* (citing *Walden v. Fiore*, 571 U.S. 277 (2014) and *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064 (9th Cir. 2017)).)  Thus, the simple fact that Defendants took action against Plaintiff and knew Plaintiff had connections to this forum could not, without more, be used to establish minimum contacts.

None of the new factual allegations in the FAC warrant a different result.  At most, Plaintiff has alleged that Defendants knew that the initiation of takedown actions "would necessarily affect [Plaintiff's] sales and activities, particularly in California." (FAC ¶ 31.)  However, this allegation is again focused on Defendants' contact with Plaintiff and as stated, "[t]he plaintiff cannot be the only link between the defendant and the forum."  *Walden*, 571 U.S. at 285.  The new factual allegations in the FAC thus do not change the Court's prior analysis of whether Defendants' actions were expressly aimed at the forum.

////

### ii. *SnapPower v. Lighting Defense Group*

Instead of focusing on the factual differences between the FAC and the prior complaint, Plaintiff's argument in opposition is focused instead on the decision of the Federal Circuit in *SnapPower v. Lighting Defense Group* from May 2, 2024. (Opp'n at 9–11 (citing *SnapPower*, 100 F.4th 1371 (Fed. Cir. 2024)).) In *SnapPower*, the plaintiff filed suit based on takedown actions the defendant initiated against the plaintiff's Amazon product listings based on the products' alleged violation of the defendant's patent.[4] *SnapPower*, 100 F.4th 1373–74. The plaintiff, a company incorporated and located in Utah, filed said suit in the United States District Court for the District of Utah, despite the defendant being a Delaware company with its principal place of business in Arizona. *Id.* Besides the initiation of the takedown action against the plaintiff's Amazon product listings, the defendant seemingly had no contact with Utah. *Id.*; *see SnapRays, LLC v. Lighting Defense Group*, No. 2:22-cv-00403-DAK-DAO; 2022 WL 16712899, at *1 (D. Utah Nov. 4, 2022) *reversed and remanded by SnapPower*, 100 F.4th 1371. The Utah District Court dismissed for lack of personal jurisdiction, finding that the plaintiff had not established that the defendant had purposefully directed their acts towards the forum. *See SnapPower*, 100 F.4th at 1374; *see also SnapRays*, 2022 WL 16712899, at *5. On appeal, the Federal Circuit reversed the Utah District Court's decision. In doing so, the circuit court relied heavily on two pre-*Walden* cases from other circuits: the Ninth Circuit's decision in *Bancroft* and the Tenth Circuit's decision in *Dudnikov*. *Id.* at 1375–76.

In *Bancroft*, a decision that predates *Walden* by 14 years, the Ninth Circuit found express aiming based on a cease and desist letter sent to a third party.

---

[4] The takedown action in *SnapPower* was based on alleged patent infringement where the present action is based on alleged trademark infringement. *See SnapPower*, 100 F.4th at 1373. Despite Defendants' contentions otherwise, this does not meaningfully distinguish *SnapPower* from the present case. However, it should be noted, that because Plaintiff's federal claims are based on the Lanham Trademark Act, not patent law, Ninth Circuit law controls. *See* 28 U.S.C. § 1295; *see also* Soilworks, LLC v. Midwest Industrial Supply, Inc., No. 06-cv-2141-PHX-DGC, 2007 WL 704511, at *3 (D. Ariz. Mar. 5, 2007). Thus *SnapPower*, while persuasive authority, is not binding on this court while Ninth Circuit authority is binding.

11

*Bancroft*, 223 F.3d at 1087. But the court expressly relied on the belief that "the [express aiming] requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.* As discussed in the Court's prior order, the Ninth Circuit has since recognized that *Walden* clearly rejected that express aiming could be satisfied based simply on the defendant directing acts at a plaintiff the defendant knows resides in a particular forum. *See Axiom*, 874 F.3d at 1069 ("[Appellants] rely on the strength of their own forum connections, coupled with evidence suggesting [Defendant] knew of those connections . . . . *Walden* requires more."); *see also Walden*, 571 U.S. at 289 ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."). Other courts in this circuit have questioned the validity of *Bancroft* in light of *Walden*. *See Bluestar Genomics v. Song*, 2023 WL 4843994, at *21 (N.D. Cal. May 25, 2023) ("*Bancroft* is no longer good law in light of the Supreme Court's holding in *Walden* . . . ."); *see also Valve Corp. v. Zaigler, LLC*, No. 2:23-cv-01819-JHC, 2024 WL 3917194, at *5 (W.D. Wash. Aug. 20, 2024).

To be sure, the Ninth Circuit's continued application of *Bancroft* makes it clear that *Bancroft* remains good law in at least some capacity. *See San Diego Cnty. Credit Union*, 65 F.4th at 1035–36 (citing *Bancroft*, 223 F.3d 1082). But to the extent that *Bancroft* stands for the proposition that purposeful direction can be predicated on a defendant expressly aiming conduct at a plaintiff and that plaintiff's presence in a forum, this is no longer valid after *Walden*. *See Impossible Foods Inc. v. Impossible X LLC*, No. 21-cv-02419-BLF, 2021 WL 5331444, at *6 (N.D. Cal. Nov. 16, 2021) ("While other principles from *Bancroft & Masters* may live on, [the rule that the express aiming element was satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state] is the exact one that *Walden* rejected."), *rev'd and remanded on other grounds by* 80 F.4th 1079 (9th Cir. 2023). This is precisely the purpose for which

*Bancroft* was cited by the *SnapPower* court. *See SnapPower*, 100 F.4th at 1375-66 (stating that *Bancroft* held that express aiming was satisfied because "the defendant acted intentionally when it sent the letter, and even though the letter was sent to NSI in Virginia, it was expressly aimed at the plaintiff in California because it individually targeted the plaintiff, a California corporation, and the effects would foreseeably be felt primarily in California."). This citation to and description of *Bancroft* by the Federal Circuit is thus not binding on this Court, nor is it persuasive.

As to *Dudnikov*, this Court specifically discussed and rejected the application of that decision from the Tenth Circuit – as well as the Tenth Circuit's later decisions re-affirming it in the wake of *Walden* – in its prior order. (*See* MTD Order at 10-12.) This Court found that *Dudnikov* ran counter to the instruction of *Walden* and subsequent Ninth Circuit decisions that a defendant's mere knowledge of a plaintiff's presence in a forum was insufficient to satisfy the express aiming requirement of *Calder*. There is nothing that suggests the Court's prior decision was incorrect.

Applying *Bancroft* and *Dudnikov*, the Federal Circuit in *SnapPower* decided that because "the intended effect [of the defendant's actions] would necessarily affect marketing, sales, and other activities within Utah[,]" the requirements of *Calder* were satisfied without running afoul of *Walden*. *SnapPower*, 100 F.4th at 1377. The *SnapPower* court analogized their decision to the *Calder*, in which the Supreme Court found personal jurisdiction over two nonresident defendants in a libel action brought by a California actress based on an article the defendants wrote for the National Enquirer. *Id.* (citing *Calder v. Jones*, 465 F.3d 783 (1984)). As described by the Ninth Circuit in *Axiom*, the "defendants contacted 'California sources' for information and wrote about the actress's activities in California. Roughly 600,000 copies of the article were sold in California, where the actress suffered the 'brunt' of the reputational injury." *Axiom*, 874 F.3d at 1071 (internal citations omitted) (citing *Calder*, 465 U.S. at 788-89). This is a far cry from the generalized effects on "marketing, sales, and other

////

13

activities" within the forum state that the Federal Circuit found sufficient in *SnapPower*. *See SnapPower*, 100 F.4th at 1377.

Further, the vague effects that the *SnapPower* court found satisfactory are entirely reliant on the plaintiff's sheer presence in that forum.  Unlike the acts of the defendant in *Calder*, the *SnapPower* defendant's only connection to the forum was through the plaintiff as a conduit.  The defendant's actions targeted only the plaintiff and their internet product listings; any impact on the plaintiff's marketing, sales, and other activities in the forum state are secondary effects based on the plaintiff's contact with the forum, not the defendant's.  Contact with the plaintiff is insufficient to form the basis for express aiming in light of *Walden*, even where the defendant knows of the plaintiff's presence in the forum.  As noted by the Ninth Circuit in discussing *Walden*, "[t]he Court made clear that we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom*, 874 F.3d at 1070 (quoting *Walden*, 571 U.S. at 289).  Given the above, the decision in *SnapPower* appears inconsistent with *Walden* and the Ninth Circuit's interpretation of *Walden*.

In seeking to apply *SnapPower* to the present case, Plaintiff argues that Defendants should be held to have expressly aimed their actions at California, based on the same broad suggestion found in *SnapPower* that Defendants' actions would necessarily affect marketing, sales, and other activities within California.  The Court finds that under the binding authority of Ninth Circuit and Supreme Court decisions, this is insufficient to satisfy the purposeful direction analysis. *See Walden*, 571 U.S. at 291; *Axiom*, 874 F.3d at 1069–70.  As stated in the Court's prior order, "*Walden* and the Ninth Circuit's subsequent decisions clearly instruct that a plaintiff's presence in the forum cannot serve as the basis for minimum contacts, regardless of the defendant's knowledge of that presence." (MTD Order at 10.)  The factual allegations in the FAC only establish Defendants' contact with this forum through the fact that Plaintiff happened to be present in California.  Despite Plaintiff's arguments to the

contrary, this is insufficient to establish minimum contacts with this forum and, thus, the Court does not have personal jurisdiction over Defendants.

## LEAVE TO AMEND

The Court previously granted Plaintiff leave to amend to resolve the personal jurisdiction issues in the initial Complaint. Plaintiff's FAC is largely the same as the original Complaint with only minimal additions. Thus, it seems apparent that at this stage amendment would be futile and Plaintiff cannot cure the deficiencies of the FAC with further leave to amend. *See Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 608 (N.D. Cal. 1992). As such, further leave to amend will not be granted.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction (ECF No. 22) is GRANTED;
2. Plaintiff's First Amended Complaint is DISMISSED without prejudice for lack of jurisdiction and without leave to amend; and
3. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated:  **February 10, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – dadbod23cv00188.12b2_2